UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gerald Tropple and Theresa Tropple,  Case No. 13-cv-2907 (PAM/LIB)

    Plaintiffs,

and

Peerless Industrial Group, Inc. and Liberty  **MEMORANDUM AND ORDER**
Mutual Insurance Company,

    Plaintiffs on Joinder,

v.

Black & Decker (U.S.) Inc.,

    Defendant.

_____

This matter is before the Court on Black & Decker's Motions for Summary Judgment and to Exclude Expert Testimony and the Tropples' Motion to Exclude Expert Testimony. For the reasons that follow, the Court grants in part and denies in part both of Black & Decker's Motions and denies the Tropples' Motion without prejudice.

**BACKGROUND**

This is a product-liability case. Gerald and Theresa Tropple are suing Black & Decker (U.S.) Inc. for an injury they allege was caused by a defectively designed and inadequately warned small angle grinder. Peerless Industrial Group, Inc. and Liberty Mutual Insurance Company are joined parties with subrogation interests.

Gerald worked as a welder at Peerless's chain manufacturing plant in Winona, Minnesota. (Borgen Decl. (Docket No. 102) Ex. 1, at 55-56.) On May 31, 2011, he was injured on the job while attempting to use a small angle grinder. (Id. at 70.)

The grinder is a DeWalt D28112 model and was manufactured by Black & Decker. (Id. Ex. 4, at 18.) It features a four-and-a-half inch cutting blade, a guard that partially covers the blade, a side handle, and a power cord. (Sorensen Aff. (Docket No. 99) Ex. C, at 17.) The grinder also includes a black "on/off" power switch. (Ponessa Aff. (Docket No. 92) Ex. 5, at 1.) Small angle grinders come installed with one of two types of switches that control power: a lock-on switch or a constant-pressure switch. (Sorensen Aff. Ex. C, at 319.) A lock-on switch can lock in the "on" position to provide continuous power; a constant-pressure switch requires the operator to hold the "on" position to provide continuous power. (Id.) This model of grinder has a lock-on switch. (Id.) It is rated to run on alternating current (AC) or direct current (DC). (Id.) But the grinder does not include a certain technology installed on many small angle grinders: a no-volt release, which disconnects the lock-on switch if power is interrupted. (Borgen Decl. Ex. 4, at 57-58.) The release prevents the grinder, for instance, from inadvertently starting up once plugged in if the power switch was locked on. (Id.) On the grinder is a warning label that refers the operator to the grinder's manual, and the manual warns three times of this potential for inadvertent startup. (Ponessa Aff. Ex. 10, at 179.)

The grinder that Gerald used, however, had been modified. (Sorensen Aff. Ex. A, at 133, 136-37.) An oversized six-inch blade was added, the guard was removed, and the

handle was not attached. (Id.) The use of the modified grinder violated OSHA and Peerless safety standards. (Ponessa Aff. Ex. 10, at 238.)

The day of the incident, a rod was obstructing the area within the machine on which Gerald and a fellow employee, Brad Lisowski, were working. (Borgen Decl. Ex. 1, at 70-74.) They decided to cut the rod with the grinder. (Id. at 70-72) Gerald retrieved the grinder and went to plug it in. (Id. at 95-96) At the Peerless facility, electrical power is provided through extension cords that hang from the ceiling. (Id. at 101-03.) The hanging outlets are powered by alternating current rather than direct current. (Agrimson Decl. (Docket No. 104) ¶ 3.) There are two accounts in the record of what happened next.

The first account comes from the initial report written by Lisowski, who was present when the incident occurred but did not actually see what transpired. (Ponessa Aff. Ex. 1.) The report indicates that Gerald plugged in the grinder while having it "tucked in his right armpit" and "the grinder's on/off switch was on"—when "he plugged it in," the grinder "cut[] his arm." (Id.) The report also states that the incident was caused by Gerald plugging in the grinder "without having [the] switch in [the] off position and didn't have a guard on [the] cutter's blade." (Id.)

The second account comes from Gerald's deposition testimony, where he demonstrated what happened. (Borgen Decl. Ex. 1, at 70-72.) According to Gerald, he was holding the grinder above his head with his right hand while trying to plug it into the electrical power cord hanging from the ceiling with his left hand. (Id.) As he "reached up with the grinder," he "plugged [it] in." (Id. at 71.) "[T]he switch was [in] the on

3

position." (Id.)  At that moment, "the grinder start[ed] up as soon as the electricity went to it," and the "torque" from the grinder powering on caused the grinder to "fl[y] out of [his] right hand, "land[] on [and lacerate his] bicep," and "knock[] [him] to the floor." (Id.)  Gerald admits that he did not check to see if the power switch was in the on position and that he did not read the warning label attached to the grinder.  (Id. at 172, 185.)

The injury to Gerald's right bicep was surgically repaired on the day of the incident.  (Id. Ex. 2.)  In August 2011, he returned to work full time but can no longer weld.  (Id. Ex. 1, at 214-15.)  Because the injury was work-related, Peerless and its workers' compensation insurer, Liberty Mutual, paid Gerald medical expenses, lost wages, and disability benefits.

Gerald, along with his wife Theresa, then sued Black & Decker in state court, asserting claims for negligence and strict liability based on defective-design and failure-to-warn theories, and seeking recovery for personal-injury and loss-of-consortium damages.  (Compl. (Docket No. 1-1) 3-4.)  Black & Decker removed the case to this Court.  (Notice of Removal (Docket No. 1).)  The Tropples eventually joined Peerless and Liberty Mutual as parties given that their potential recovery could be reduced by Peerless's relative fault and that Peerless and Liberty Mutual have potential claims for contribution.  (Am. Compl. (Docket No. 24) 2.)  The parties have answered all respective claims against them.  (Answers (Docket Nos. 28, 31, 38.).)

Black & Decker now moves for summary judgement and to exclude expert testimony.  The Tropples also move to exclude expert testimony.

4

**DISCUSSION**

Because the Court's rulings on the Motions to Exclude Expert Testimony could affect the evidence relevant to the Motion for Summary Judgment, the Court will address the Motions to Exclude Expert Testimony before the Motion for Summary Judgment.

**A.     Motions to Exclude Expert Testimony**

In deciding the admissibility of expert testimony, the Court applies a three-part test. Lauzon v. Senco Prods., Inc., 270 F.3d 681, 687 (8th Cir. 2001); see also Fed. R. Evid. 702. First, the Court examines whether evidence based on scientific, technical, or other specialized knowledge is "useful to the finder of fact in deciding the ultimate issue of fact." Id. Second, the Court assesses whether the witness is "qualified to assist the finder of fact." Id. Finally, the Court determines if the evidence is "reliable or trustworthy in an evidentiary sense." Id. (quotation omitted). The proponent of an expert witness must prove that the proposed testimony is admissible by a preponderance of the evidence. Polski v. Quigley Corp., 538 F.3d 836, 841 (8th Cir. 2008).

**1.     Black & Decker's Motion**

Black & Decker seeks to exclude the testimony of the Tropples' expert Gerald Rennell, and Peerless and Liberty Mutual's expert David Hallman. As to Rennell, Black & Decker argues that he is not qualified to testify on product design or warnings, his testimony is unreliable because it lacks foundation, and the testimony is irrelevant as legally deficient to the Tropples' claims. As to Hallman, Black & Decker primarily argues that he is also not qualified to testify on product design or warnings. The relative

qualifications of the two experts are dispositive here, and the Court will exclude Rennell's testimony but admit Hallman's testimony on that basis.

Under Rule 702, a witness may be qualified to testify as an expert based on knowledge, skill, experience, training, or education. Fed. R. Evid. 702. The Court must "ensure that an expert's testimony does not exceed the scope of his expertise." Wagner v. Hesston Corp., No. 03-cv-4244 (JNE/JGL), 2005 WL 1540135, at *7 (D. Minn. June 30, 2005) (Ericksen, J). "Rule 702 does not rank academic training over demonstrated practical experience." United States v. Roach, 644 F.3d 763, 764 (8th Cir. 2011). But Rule 702 requires more than generalized knowledge of a particular subject. Stallings v. Black & Decker Corp., No. 06-cv-4078 (JPG), 2008 WL 4530695, at *7 (S.D. Ill. Oct. 7, 2008).

    a.    **Gerald Rennell**

Rennell calls himself a "safety engineer." (Ponessa Aff. Ex. 5, at 2.) According to Rennell, his job as a safety engineer is to analyze industrial machines for hazard risks and determine what safeguards are necessary to protect operators from injury. (Borgen Decl. Ex. 5, at 228-29.) Over 46 years, he has conducted thousands of plant inspections and accident investigations. (Id. at 26, 28-30, 140.) In particular, he worked as a safety engineer at General Motors from 1969 to 1971, a safety consultant with Michigan Mutual Insurance from 1972 to 1977, and a safety consultant with McCarthy Robinson/Technical Safety Associates since 1977. (Ponessa Aff. Ex. 5, at 2.) He graduated from high school in 1957, completed a 40-hour safety engineering training course while at General Motors, achieved 30 credit hours of occupational safety at the Detroit Institute of Technology, and

has taught and lectured on safety subjects at various educational institutions. (Id. at 2, 92-93, 229; Borgen Decl. Ex. 5, at 229, 275.)

In forming his opinions, Rennell reviewed various portions of the record, inspected the grinder at issue, and observed other grinders on the market. (Ponessa Aff. Ex. 5, at 3-4.) His primary opinion is that the grinder was unreasonably dangerous and defective because it uses a lock-on power switch without a no-volt release that would have prevented inadvertent startup. (Id. at 1.) His secondary opinion is that the present warnings are inadequate because the added danger created by a lock-on switch without release technology cannot be eliminated by warnings on the grinder's warning label or in the grinder's manual, and that consumers must be warned at the point of sale that lockable grinders are dangerous and should be purchased only when necessary. (Id. at 8, 65-66.)

Rennell, however, lacks the requisite qualifications to offer expert testimony about the grinder's design or warnings. The record shows that Rennell is nothing more than a "safety consultant." He has neither been educated or trained nor worked as an engineer. (Ponessa Aff. Ex. 7, at 228.) He has no experience, knowledge, or skill with the design of power tools—he admits that he could not design a small angle grinder. (Id. at 204.) He has undertaken no studies to test the feasibility of his theorized alternative designs. (Id. at 204-05.) And he admits that he is not an expert in the design of switches for power tools. (Id. at 208.) Several courts have previously excluded Rennell's proffered expert opinions in cases involving the design of power tools for similar reasons. See Baller v. DeWalt Indus. Tool Co., No. 1:95-cv-85 (W.D. Mich., Apr. 24, 1996); Hayes v.

7

Black & Decker (U.S.) Inc., No. 94-cv-196 (Wis. Cir. Ct., Nov. 27, 1995); Troja v. Black & Decker Mfg. Co., 488 A.2d 516, 519 (Md. Ct. Special App.), cert. denied, 303 Md. 471 (1985).

### b. David Hallman

By contrast, Hallman is a licensed engineer. He has an undergraduate degree in mechanical engineering, obtained a master's degree in material science and engineering, has worked as an automotive technician and mechanical structural design engineer, and currently works as a mechanical engineer. (Johnson Aff. (Docket No. 97) Ex. B.) He was responsible for assuring that products he designed—which included vehicle components and defense equipment—met appropriate safety standards and included adequate warnings. (Id. Ex. C, at 65.) And he used small angle grinders in his work as a mechanic and is familiar with power tools with lock-on switches. (Id. at 249.)

In forming his opinions, Hallman reviewed materials in the record and inspected the grinder at issue. (Id. Ex. D.) He concluded that a no-volt release would have prevented the grinder from inadvertent startup and likewise the incident here, the warning label on the grinder did not warn users of the risk of inadvertent startup, and a visual indication warning users that the grinder's switch was locked on could have been added to the grinder. (Id.)

Hallman bears the necessary qualifications to offer expert testimony about the grinder's design or warnings. In particular, his proposed testimony falls within the scope of his expertise. He is a mechanical engineer with experience in designing products, identifying potential hazards with those products, and assessing product failures. His

testimony involves assessing product design, the hazards of the product in question, and the failure of the warning in this case. Though he has never designed or created warnings for a small angle grinder, his knowledge of design and safety principles with respect to other power tools qualifies him to testify on the design and warning of the grinder. See DaSilva v. Am. Brands, Inc., 845 F.2d 356, 361 (1st Cir. 1988) (rejecting the argument that courts should "admit testimony only from mechanical engineers who have had design experience with the specific machine in question").

In sum, Rennell—a safety consultant with no engineering training or skill—is unqualified to testify as an expert on the grinder's design or warnings. But Hallman—a mechanical engineer with strong education credentials and broad industrial-product experience—is qualified to testify as an expert on the subject. Only Hallman's testimony is therefore admissible.

### 2. The Tropples' Motion

The Tropples seek to exclude certain testimony of Black & Decker's liability experts—Jack Hyde, Jr., Timothy Rhoades, and Lynn Lentino (who is also designated as a 30(b)(6) witness)—because it is duplicative or cumulative. They argue that the three experts offer nearly identical opinions on the same subjects: applicable product safety standards, the absence of a defect, lock-on switches, lock-out technology, instructions and warnings, causation, and opposing experts' opinions. (See Borgen Decl. Exs. 2-4.) This decision, however, is better left for trial. To warrant exclusion, the probative value of the testimony must be "substantially outweighed" by the danger that the testimony will be "needlessly cumulative. Fed. R. Evid. 403. Given that the experts have diverse

backgrounds that may allow them to testify based on their own distinct perspectives (see Borgen Decl. Exs. 2-4), it is unclear at this point that the testimony is needlessly cumulative. Further, the experts may offer rebuttal testimony concerning different aspects of the opposing expert's testimony, and the Court cannot weigh the effect of the potentially repetitive testimony until the initial testimony is elicited at trial. Once the subject and scope of Plaintiffs' expert testimony becomes clear at trial, the Court will be better positioned to assess whether Black & Decker's expert testimony is cumulative. The Court will deny the Motion without prejudice as premature.

**B.     Motion for Summary Judgment**

Summary judgment should be granted if the moving party shows that there are no genuine disputes of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the case. Paine v. Jefferson Nat'l Life Ins. Co., 594 F.3d 989, 992 (8th Cir. 2010). A dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. Id. When evaluating a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Marlowe v. Fabian, 676 F.3d 743, 746 (8th Cir. 2012). To defeat summary judgment, however, the nonmoving party may not rest on conclusory allegations or denials, but "must produce probative evidence sufficient to demonstrate a genuine issue of material fact for trial." Paine, 594 F.3d at 992 (quotation and brackets omitted).

**1. Design-Defect Claim**

Black & Decker seeks summary judgment on the Tropples' design-defect claim because they have failed to present evidence that a feasible, alternative safer design exists or that any design defect proximately caused Gerald's injury. Black & Decker is wrong on both fronts.

To establish a claim for a design defect, a plaintiff must prove three elements: (1) "the defendant's product was in a defective condition unreasonably dangerous for its intended use," (2) "the defect existed when the product left the defendant's control," and (3) "the defect was the proximate cause of the injury sustained." Bilotta v. Kelley Co., Inc., 346 N.W.2d 616, 623 n.3 (Minn. 1984). Minnesota courts have "merge[d]" negligence and strict-liability theories into a single products-liability theory, "which employs a reasonable-care balancing test to determine whether a product is defective." Thompson v. Hirano Tecseed Co., 456 F.3d 805, 808-09 (8th Cir. 2006). This test examines whether the manufacturer "fails to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended, as well as an unintended yet reasonably foreseeable use." Mozes v. Medtronic, Inc., 14 F. Supp. 2d 1124, 1127 (D. Minn. 1998). Showing that a product is unreasonably dangerous "normally requires production of evidence of the existence of a feasible, alternative safer design." Kallio v. Ford Motor Co., 407 N.W.2d 92, 96 (Minn. 1987).

Turning to Black & Decker's specific challenges, the Tropples have presented evidence through the expert Hallman of three alternative designs: a grinder that has (1) a

no-volt release, (2) a constant-pressure switch, or (3) a red or lighted power switch. (Sorensen Aff. Ex. C, at 17, 319.) The second and third alternative designs are insufficient as a matter of law. A constant-pressure switch is not feasible because it would utterly change the product itself, and no expert opines that a grinder with a lock-on switch is inherently dangerous. A red or lighted power switch is also not probative because Hallman conducted no testing to assess whether a red or lighted power switch, as opposed to a black one, would have made it more likely that a user would notice that the switch was locked in the on position.

But a design with a no-volt release is both feasible and safer. Black & Decker already manufactures six other grinders that have such a release. (Id. Ex. G, at 316-18, 334-35.) And all experts in this case agree that a no-volt release thwarts inadvertent startup and would have prevented the incident here. (Id. Ex. C, at 17; Ex. G, at 283; Ex. H, at 101.) Black & Decker disputes the feasibility of the release technology, pointing to a declaration from company representative Lentino who avers that a grinder with the release would be inoperable if plugged into direct-current power. (See Lentino Decl. (Docket No. 108) ¶ 5.) Yet Black & Decker's own expert Hyde testified that while the release does not work on direct current, the grinder itself is still operable. (Sorensen Aff. Ex. H, at 112.) This discord in testimony raises a quintessential credibility question for the jury to determine. See Thomas v. Thomas, 407 N.W.2d 124, 126 (Minn. App. 1987).

The record also contains enough evidence of proximate causation. Though the experts disagree on the precise cause or causes of the incident, they all agree that the technology existed to equip the grinder with a no-volt release, and that the release would

have from prevented the grinder from starting when Gerald plugged it in. In light of this, the jury must determine which expert has the most credible view on causation. See Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 821 (8th Cir. 2010) (quoting Canada v. McCarthy, 567 N.W.2d 496, 506 (Minn. 1997) (explaining that causation is generally a question of fact for the jury unless the facts are undisputed and "reasonable minds could only reach one conclusion")).

The Tropples have presented sufficient evidence to create genuine issues of material fact on whether a no-volt release would have been a feasible, alternative safer design and whether the failure to install that release proximately caused Gerald's injury. That evidence may conflict with Black & Decker's experts' opinions, but this conflict is for the jury, not the Court, to resolve. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Thus, Black & Decker is not entitled to summary judgment on the design-defect claim.

### 2. Failure-to-Warn Claim

Black & Decker also seeks summary judgment on the Tropples' failure-to-warn claim. It argues that the allegedly inadequate warnings could not have caused Gerald's injury given that he did not look at the warnings on the grinder. On this point, Black & Decker is correct.

To establish a claim for the failure to warn, a plaintiff must prove three elements: (1) "the defendant had a duty to warn," (2) the defendant breached that duty by providing an inadequate warning (or no warning at all)," (3) "the defendant's inadequate (or nonexistent) warning caused the plaintiff's damages." Kapps v. Biosense Webster, Inc.,

813 F. Supp. 2d 1128, 1155 (D. Minn. 2011) (Schiltz, J.) (citing <u>Balder v. Haley</u>, 399 N.W. 77, 81 (Minn. 1987)). As relevant here, however, Minnesota courts have consistently held that a plaintiff's failure to read a warning on a product precludes a failure-to-warn claim as a matter of law. <u>See</u> <u>Lammle v. Gappa Oil Co., Inc.</u>, No. A08-0582, 2009 WL 67438 at *8 (Minn. App. Jan. 13, 2009) (absent a reading of the warning, there is no causal link between the alleged inadequate warning and the injury, and a district court may properly grant summary judgment to the product manufacturer under such circumstances); <u>Lindsay v. St. Olaf College</u>, No. A06-2416, 2008 WL 223661 at *5 (Minn. App. Jan. 29, 2008); <u>Marko v. Aluminum Co. of Am.</u>, 1994 WL 615004, at *2 (Minn. Ct. App. Nov. 8, 1994), rev. denied (Minn. Jan. 9, 1995) (affirming summary judgment in defendants' favor on a failure-to-warn claim where plaintiff's practice was not to read warnings and plaintiff "conceded that he did not read the warnings actually provided").

Not only does Gerald confess that he failed to check if the switch was in the on position, but he also concedes that he failed to read the warning on the grinder, which referred him to the warnings in the manual about inadvertent startup. (Borgen Decl. Ex. 1, at 172, 185.) This admission severs any causal link between the alleged inadequate warning and his injury. Warnings are only effective if read. (Ponessa Aff. Ex. 10, at 83.) And even if the warning about inadvertent startup should have been placed on the warning attached to the grinder itself, as the Tropples contend, it would have made no difference under Minnesota law because Gerald did not look at the existing warning on the grinder.

Gerald's failure to read the warning on the grinder is fatal as a matter of law to his claim that the grinder lacked an adequate warning. As a result, Black & Decker is entitled to summary judgment on the failure-to-warn claim.

**CONCLUSION**

Rennell's testimony is excluded, Hallman's testimony is admissible, the admissibility of Black & Decker's expert testimony will be determined at trial, there are genuine disputes of material fact on the Tropples' design-defect claim, and Black & Decker is entitled to judgment as a matter of law on the Tropples' failure-to-warn claim. Accordingly, **IT IS HEREBY ORDERED** that:

1. Black & Decker's Motion for Summary Judgment (Docket No. 88) is **GRANTED in part** and **DENIED in part**;

2. Black & Decker's Motion to Exclude Expert Testimony (Docket No. 90) is **GRANTED in part** and **DENIED in part**; and

3. The Tropples' Motion to Exclude Expert Testimony (Docket No. 80) is **DENIED** without prejudice.

Dated: August 20, 2015

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge